# 96 DTA 151

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ

EL PUEBLO DE PUERTO RICO
Apelado

v.

LUIS A. FERRER PABON
Apelante

Núm. KLAN-95-00796

San Juan, Puerto Rico, a 4 de octubre de 1996

Panel integrado por su presidente, Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Feliciano de Bonilla

Colón Birriel, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

**I**

El apelante Luis A. Ferrer Pabón fue acusado ante el Tribunal de Primera Instancia, Sala Superior de Mayaguez, por una infracción al Artículo 3.1 de la Ley Núm. 54 del 15 de agosto de 1989, conocida como *"Ley para la Prevención e Intervención con la Violencia Doméstica"*, 8 L.P.R.A. sec. 601 y ss. El 15 de mayo de 1995, luego de un juicio por Tribunal de Derecho, fue hallado culpable y convicto del delito de Agresión Agravada en su modalidad menos grave, Art. 95 del Código Penal, 33 L.P.R.A. sec. 4032. Fue referido a las Oficinas de los Oficiales Probatorios, para la investigación e Informe Pre-Sentencia correspondiente. Una *"Moción Solicitando Reconsideración de Fallo"* presentada por el apelante, le fue denegada.

Posteriormente, el 28 de junio de 1995, el tribunal lo sentenció al pago de una multa de $250.00, que de no satisfacerse, se convertiría en pena de reclusión a razón de un (1) día de reclusión, por cada $5.00 que se dejaran de pagar, sin exceder la prisión subsidiaria de noventa (90) días de cárcel.

Inconforme con el referido dictamen, el apelante recurre ante nos, imputándole al Tribunal de Primera Instancia haber incurrido en los siguientes errores:

*"(a) Cometió error el Honorable Tribunal de Instancia al declarar culpable y convicto al acusado por el delito de agresión agravada en su modalidad menos grave, a pesar de que el Ministerio Público no estableció los elementos del delito, ni probó su culpabilidad más allá de duda razonable;*

*(b) El análisis efectuado por el Tribunal de Instancia, no constituye el balance más racional, justiciero y jurídico de la prueba;*

*(c) Cometió error el Honorable Tribunal de Instancia, al resolver que era impermisible que el Dr. Adalberto Rodríguez Robles, declarará en el proceso por la relación entre éste y los testigos de cargo."*

Examinado el recurso, confirmamos.

**II**

En vista a los señalamientos sobre insuficiencia de prueba alegados por el apelante, la solución del recurso requiere que hagamos un resumen de dicha prueba. A continuación reproducimos, en lo pertinente, la prueba del Ministerio Público y la del apelante, según surge de la Exposición Narrativa de la Prueba *("E.N.P.")* que certificara como correcta el Tribunal de Primera Instancia.

La del Ministerio Público consistió de los testimonios de tres (3) testigos: 1) el del Policía Ferdinand Nazario Vázquez; 2) el de la perjudicada Ana E. Asencio Rivera; y 3) el de la joven Johanne Ferrer Asencio, hija de la perjudicada. La del apelante consistió de su propio testimonio.

## A. Prueba del Ministerio Público

### 1. Declaración del Policía Ferdinand Nazario Vázquez

Se aceptó su capacidad como testigo y que fue quien investigó los hechos, por los cuales fue denunciado y acusado el apelante. Para la fecha de los hechos, 2 de septiembre de 1994, se encontraba de servicio en turno de 8:00 p.m. a 4.00 a.m. A eso de las 10:00 a.m. se personó al Cuartel de la Policía de Distrito de Mayaguez, la señora Ana Asencio, querellándose de que su esposo (el apelante) había tenido un problema con ella, en el cual le había arrebatado unas llaves o la licencia del vehículo y luego la había empujado; que esa señora fue al cuartel acompañada de sus dos hijas y un niño de 9 años de edad; que la notó llorando y molesta por la situación. Pág. 2, E.N.P.

Luego de lo relatado por la señora Asencio, procedió a dirigirse al lugar de los hechos en unión al Teniente Cuerda; que cuando llegaron a la residencia del matrimonio, encontró al apelante en los altos de la casa; que le informó a éste lo que estaba sucediendo; que el apelante estaba en pantalones cortos y contestó que le diera una oportunidad de ponerse ropa adecuada para dirigirse al Cuartel; que una vez en el Cuartel, se le dio conocimiento al Fiscal de turno, el cual ordenó, luego de haber escuchado la versión de la señora Asencio, que se le radicara denuncia por violación al artículo 3.1 de la Ley 54; que ante el juez, la perjudicada se querelló de que el apelante tenía licencia para tener y poseer un arma de fuego y el juez ordenó que el apelante entregara dicha arma; la perjudicada también le indicó al juez que la conducta del apelante era repetitiva. Pág. 2, E.N.P.

En el contrainterrogatorio a preguntas de la defensa atestó que como resultado de su investigación confeccionó un informe, en el que anotó todo lo que se le había informado; se identificó el informe y se admitió en evidencia; se le preguntó luego de ello, que si en el informe el había relatado todo lo que se le informó y observó, a lo que contestó que era correcto; se le preguntó si era o no cierto de que en el informe, no se mencionaba el que el apelante hubiese empujado a la perjudicacla, contestando que no; procedió a leer el informe y contestó que es correcto lo que se dice en éste de *"que él la cogió para quitarle las llaves, sin ocasionarle daño alguno"; tampoco en el informe se dice que la perjudicada se le querellara de conducta repetitiva; que en la denuncia juramentada por el testigo, lo único que se dice es que él la "agarró por las manos para quitarle las llaves, sin ocasionarle daño físico";* la querellante le informó que el acusado le arrebató las llaves; siguió declarando que no se le querellaron de malas palabras, de presión psicológica, ni de insultos. Págs. 2 y 3, E.N.P.

En el redirecto éste testigo declaró a preguntas del Ministerio Público, que la perjudicada le había declarado, primero que el apelante la agarró y forcejeo con ella para quitarle las llaves; que según lo informado por dicha perjudicada, hubo un forcejeo; que en los informes que se redactan, no necesariamente se hace constar, lo que se le informa al investigador. Pág. 4, E.N.P.

A preguntas del Honorable Juez que presidió la vista y a modo de aclaración declaró que, independientemente de lo que había escrito en el informe, le había declarado al Lcdo. Toro Iturrino (representante legal del apelante) que lo que recibió como información de la perjudicada, era que el apelante le cogió las manos a ésta y le arrebató las llaves; que la palabra forcejeo sale de la versión que le da la perjudicada de que para quitarle las llaves ella no se las dejó quitar y para quitárselas empieza un forcejeo entre uno y el otro; se reiteró a preguntas del juez en que el apelante le quitó las llaves a la perjudicada mediante forcejeo. Págs. 5, E.N.P.

### 2. Declaración de Ana E. Asencio Rivera

Atestó a preguntas del Ministerio Público que reside en Mayaguez, que está pensionada; que conoce al apelante, quien es su esposo; que están casados y han procreado tres hijos; que dos de éstos son femeninas mayores de 18 años, estudiantes en el Colegio de Agricultura y Artes Mecánicas de Mayaguez y el otro es un varón menor de edad, quien estudia en el Colegio Nuestra señora del Carmen; que el día de los hechos 2 de septiembre, había estado en el neurólogo, llevando a sus hijos a tratamiento y al llegar a su casa encuentra que está abierta, iluminada y el vehículo de su esposo [el apelante] estaba en los bajos; que su esposo había roto la

cerradura del candado del portón de la reja y había entrado, había acomodado sus pertenencias y estaba en el cuarto de matrimonio, viendo televisión en pantalones cortos; que al entrar a la casa, ya ella había decidido radicar una querella; que ella le preguntó al apelante que hacía allí y él le contestó lo que acordamos ayer; que el día anterior el apelante se personó a su casa, acordaron que él iba a contratar un abogado; que aceptaría el divorcio y asumiría las consecuencias, pero no cumplió; que el apelante se fue, al rato llamó y le preguntó, si seguía su camino o regresaba y ella le dijo que ya era suficiente el maltrato y todo lo que ella había estado sufriendo durante años, ya no podía más; que el 2 de septiembre, al ver lo que el apelante hacía, dijo no, quien tiene que irse eres tú, a lo que ella respondió, que eso no era lo que acordaron; declaró que allí estaban sus hijos; que el apelante procedió a levantarse, caminaron hacía la cocina y el apelante se abalanzó, forcejeó, le apretó las manos, la empujaba, le viraba los brazos y se los torcía; que ella le suplicaba que la dejara tranquila, que no le quitara las llaves y que por consideración al nene que estaba llorando, que se fuera y él que no; que su hija le dijo vamonos, bajaron y fueron al Cuartel de la Policía donde fueron atendidas por el policía Nazario; que esa no era la primera ocasión que ocurría eso; que anteriormente si ella no estaba en el cuarto de 10 a 10 y media, el apelante le cerraba la puerta y ella tenía que irse a dormir al cuarto de sus hijas; que aún así el abría la puerta y la sacaba de la cama, halándola y la obligaba a tener relaciones sexuales, diciéndole que mientras él pagara la casa, le tenía que servir de mujer; que la obligaba a tener relaciones sexuales aun cuando ella tenía migrañas; que se sentía y se siente humillada, amenazada, amedrentada, no sólo por eso, sino por las amenazas y las agresiones físicas; que no había tomado ninguna medida para resolver la situación, debido a las amenazas, pero que había hablado con el hermano del apelante quien es policía, para que le dijera a éste que la dejará tranquila y le diera un divorcio a la buena. Págs. 5, 6 y 7 E.N.P.

En el contrainterrogatorio atestó haber sido técnica de Servicios Sociales; ser pensionada del Sistema de Retiro, del Fondo del Seguro del Estado y del Seguro Social; que se pensionó por una amenaza de muerte que le hicieron en un caserío en el 1987; que esa amenaza causó en ella una depresión desde el 1987 hasta el presente; que el médico que la atiende desde ese tiempo hasta el presente es el Dr. Alberto Rodríguez Robles y ella le indicaba a él los problemas personales que tenía en el hogar, más sus problemas de trabajo; aceptó el haber hablado con su esposo antes del 2 de septiembre y luego de que fuera a su casa; que visitó la oficina de la Lcda. Bethzaida Jordán Ramírez, con el propósito de divorciarse de su esposo y que para esa fecha había contratado a ésta, para gestionar el divorcio; que no era correcto que ella le hubiese dicho a su esposo que había cambiado la cerradura de la puerta de la casa, a sugerencias de su abogada; que cambió dicha cerradura porque no quería que su esposo la siguiera sometiendo a humillaciones, obligándola a tener relaciones sexuales; que no había tenido conversación con su esposo en el sentido de querer divorciarse por consentimiento mutuo; que el día de los hechos quizo que sus dos hijas se quedaran en el carro, porque su hijo es epiléptico y no quería que pasara por la situación anterior de haber observado a su esposo agredir con una correa y romperle la ropa a una de sus hijas.

Continuó declarando la testigo, que cuando el policía la fue a entrevistar, ella le informó todo lo que había pasado en la casa; que no le informó a éste que el apelante la había insultado de malas palabras; que no le informó al policía que el apelante había roto el candado, por al [sic] estarse afectando los hijos, ella no estaba pendiente de quien lo rompió o no; que tampoco se lo informó al Fiscal que la entrevistó; la razón para no informarlo es que ella estaba pensando, tratando de evitar radicar una Ley 54; que ya había decidido radicar una querella; que a las únicas personas que le ha expresado sobre sus problemas con su esposo, es al psicólogo y al hermano del apelante; éste fue el que le llevó la carta de la licenciada Jordán; que la última vez que habló con su cuñado con respecto al problema con su esposo, fue en junio; que había hablado con éste respecto al problema con su esposo, como cinco o seis veces, quien le decía quedate tranquila, que sabes lo que nosotros tenemos; que lo que le ha declarado a la policía y a los fiscales es que el apelante tenía un hermano que conoce a jueces y abogados y a gente del tribunal y que iba a salir bien; aceptó que escribió unas tarjetas de felicitación al apelante, en ocasión del día de los padres y en otras ocasiones, pero que lo que sentía al escribir las palabras, era falso; que ella decidió cambiar los candados de las puertas al apelante irse de su casa y que fue por decisión propia y no de su abogada; que en ningún momento ella le ha dicho o sugerido al apelante que estaba dispuesta a quitarle la denuncia, si él le daba $2,000.00 en concepto de pensión alimenticia, en el pleito de divorcio que se estaba tramitando; que no ha tenido contacto con el apelante y no le ha sugerido tal cosa; que tampoco le ha dicho al apelante que le quitaba los casos, si él le dejaba unos apartamentos que tenía en Cabo Rojo.

En el redirecto del Fiscal atestó que las expresiones de cariño que escribió en las tarjetas para su esposo no

eran sinceras, que las hizo para que no se afectara la relación de padre a hijo; que con respecto a los candados, ella le explicó al policía que estaba[n] roto[s], ya que ella los había puesto y él no tenía llaves y al llegar él estaba en el cuarto. Págs. 7 a la 12, E.N.P.

3. Declaración de Johanne Ferrer Asencio

Declaró que estudia en el Colegio de Agricultura y Artes Mecánicas de Mayaguez; que trabaja *"part-time"* y reside con su mamá y dos hermanos; que el día de los hechos llegaron del psicólogo y notaron que las luces estaban encendidas; vió que al frente estaba estacionado el auto que su padre trajo de Florida; que subieron ella y su mamá, ya que no querían que su hermano se diera cuenta de lo que estaba sucediendo; cuando subieron, notaron que el candado estaba roto y su papá estaba en el cuarto viendo televisión en pantalones cortos; le preguntaron que hacía allí, ya que el día antes había acordado que se iría de la casa; que el contestó que no se iba, que las que tenían que irse eran ellas; que su mamá le pidió que se fuera y evitara; que él [el apelante] dijo que no y de inmediato quiso quitarle las llaves a su mamá; que ya estaban en la cocina y sus hermanos habían subido; que allí su papá agarró las manos a su mama para quitarle las llaves y comenzó a forcejear, la apretó y la empujó; que su hermana le dijo que tuviera consideración, ya que su hermanito estaba allí, pero su papá logró arrebatarle las llaves a su mamá, pero que gracias a Dios ellos tenían otro juego de llaves y pudieron ir al cuartel. Págs. 12 y 13, E.N.P.

Con estos testimonios concluyó la presentación de la prueba del Ministerio Público, quien puso a la disposición de la defensa a su restante testigo, Yamilet Ferrer Asencio, quien luego de entrevistarla, no la utilizó.

**B. La prueba del Apelante**

1. Declaración del apelante Luis A. Ferrer Pabón

Atestó estar pensionado por el Seguro Social Federal; que en el matrimonio con Doña Elizabeth Asencio Rivera procrearon tres hijos, Johanne, Yamilet y Angel; que los dos primeros estudian en el Colegio de Agricultura y Artes Mecánicas de Mayaguez y el otro en el Colegio Del Carmen; que el día antes de los hechos, había tenido un incidente con su esposa, quien le había radicado la demanda de divorcio, con la Lcda. Jordán y le había dicho que se fuera de la casa; que él le indicó a su esposa, que se iba a ir de la casa; con el propósito de resolver la situación la llamó por teléfono, para ver si podían resolver el problema y así evitar la destrucción del matrimonio; que ante la negativa de su esposa decidió orientarse con un abogado; se asesoró con el Lcdo. Tomás E. Vivoni, quien le indicó que él no tenía que irse de la casa porque también él era dueño, y siempre y cuando no hubiesen problemas entre ellos, no tenía porque irse; que ante orientación que recibió el día en que se le radicó la querella, fue a su casa y entró a la misma porque estaba abierta; que en la casa no había nadie y que se sentó a ver televisión; que al rato llegó su esposa con su hija y estando viendo televisión, éstas le indicaron que no podía estar allí, ya que por instrucciones de su abogado no lo podían permitir dentro de su casa; que su interés era dialogar con ella sobre una carta de divorcio que recibió ese día de manos de ella.

Continuó declarando que iba a sacar la ropa pero ella había cambiado los candados por instrucciones de su abogado; que le pidió las llaves y se acercó a ella y ella le dijo que se quedara allí y no la tocara y ella procedió a abrirle el candado del laundry; que después que ella cerró el portón salió al balcón y en forma amenazante, tanto ella como sus hijas le informaron que estaban bien orientadas, que tenían instrucciones de la licenciada y que iban a radicarle una Ley 54 en el Cuartel; que no reaccionó a lo que ellas le dijeron, ya que esa tarde se había orientado con el Lcdo. Tomás E. Vivoni y éste le informó que ella no podía botarlo de su residencia y que regresara a su casa después que no la tocara a ella; que en ningún momento la tocó y que lo que trató fue de poner la paz.

En el contrainterrogatorio del Fiscal, expresó que cuando su esposa llegó el día de los incidentes, ya él estaba en su casa; que tuvo acceso a la casa trepándose por la terraza. Págs. 13 y 14.

Desfilada esta prueba, el apelante fue encontrado culpable del delito de Agresión Agravada en su modalidad

menos grave y condenado al pago de una multa de doscientos cincuenta dólares ($250.00), dictamen del cual, como expresáramos anteriormente, apeló ante nos, señalando la comisión de los tres errores antes expuestos.

### III

Por estar íntimamente relacionados los señalamientos de error (a) y (b) los discutiremos conjuntamente. Estos, en esencia, se circunscriben a determinar si erró el Tribunal de Primera Instancia en la apreciación y evaluación que hiciera de la prueba que tuvo ante su consideración y, en particular, si la misma fue suficiente en derecho para establecer la culpabilidad del apelante más allá de duda razonable.

Como norma general, se ha establecido que toda convicción tiene que estar sostenida por prueba que establezca más allá de duda razonable todos los elementos del delito y la conexión del acusado con los mismos. La prueba debe ser suficiente en derecho para derrotar la presunción de inocencia que cobija al acusado. Art. II, Sección 11, Constitución del Estado Libre Asociado de Puerto Rico; *Pueblo v. Bigio Pastrana,* 116 D.P.R. 748, 760 (1985); *Pueblo v. Pagán Díaz,* 111 D.P.R. 608, 621 (1981). Para que el Ministerio Fiscal cumpla con su deber de probar la culpabilidad del acusado más allá de duda razonable, la prueba de cargo ha de ser no sólo suficiente, demostrando todos los elementos del delito imputado, sino, además, satisfactoria; es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación, o en un ánimo no prevenido. *Pueblo v. Cabán Torres,* 117 D.P.R. 645 (1985); *Pueblo v. Pagán Ortiz,* 131 D.P.R. ___ (1992), **92 J.T.S. 56;** *Pueblo v. Rodríguez Román,* 128 D.P.R. ___ (1991), **91 J.T.S. 26.** Por el contrario, lo que provoca duda razonable es precisamente esa falta de certeza o convicción moral, esa insatisfacción en la conciencia del juzgador con la prueba. *Pueblo v. Robles González,* 89 D.P.R. 169, 175 (1963).

La apreciación del juzgador de los hechos sobre la culpabilidad de un acusado es una cuestión mixta de hecho y de derecho, por lo que la determinación de culpabilidad más allá de duda razonable es revisable en apelación como cuestión de derecho. *Pueblo v. Carrasquillo,* 102 D.P.R. 545 (1974); *Pueblo v. Cabán Torres, supra*; *Pueblo en interés del menor F.S.C.,* 129 D.P.R. ___ (1991), **91 J.T.S. 68.**

Ahora, un tribunal apelativo no debe revocar una convicción a base de un planteamiento de insuficiencia de prueba, que se reduce a uno de credibilidad de testigos, en ausencia de indicios de prejuicio, parcialidad o error manifiesto. *Pueblo v. Hernández Mercado,* 126 D.P.R. ___ (1990), **90 J.T.S. 74,** a la pág. 7794; *Pueblo v. Acabá Raíces,* 118 D.P.R. 369, 375-376 (1987). La razón es obvia: por su presencia directa en el juicio, el juzgador de instancia --jurado o Tribunal de Derecho-- está en mejor posición que el tribunal apelativo para poder aquilatar la veracidad de las declaraciones de los testigos, ya que tuvo la oportunidad de verlos y escucharlos al hacer sus declaraciones. Es decir, el juzgador de instancia está en mejor condición de apreciar la conducta total o comportamiento *("demeanor")* de los testigos al declarar, lo que es imposible captar de una transcripción o exposición narrativa de la prueba. *Pueblo v. López Pérez,* 106 D.P.R. 584 (1977); *Pueblo v. Ruiz Ramos,* 125 D.P.R. ___ (1990), **90 J.T.S. 16;** *Pueblo v. Rivera, Lugo y Almodóvar,* 121 D.P.R. 454 (1988).

En el caso de autos, al apelante le fue imputado el delito de Maltrato comprendido en el Art. 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, *supra.* ■ No obstante, fue hallado culpable de una infracción al Art. 95 del Código Penal, *supra*, en su modalidad menos grave, y el que, en su parte pertinente, dispone:

*"Artículo 95:*

*La agresión se considera agravada aparejando pena de reclusión por un término que no excederá de seis meses o multa máxima de quinientos dólares, o ambas penas a discreción del tribunal, si se cometiere con la concurrencia de cualquiera de las siguientes circunstancias:*

*(a)...............................*

*(b)...............................*

*(c)...............................*

*(d).............................*

*(e) Cuando se cometiere por un varón adulto en la persona de una mujer o niño, o por una mujer adulta en la de un niño menor de 16 años."*

Ahora dicho artículo hay que estudiarlo en conjunción a su predecesor, el Art. 94 del Código Penal, 33 L.P.R.A. sec. 4031, y el cual dispone como sigue:

*"Artículo 94:*

*A toda persona que empleare fuerza o violencia contra otra para causarle daño se le impondrá pena de multa que no excederá de quinientos (500) dólares, pena de restitución, o ambas penas a discreción del tribunal."*

Se desprende de lo anterior que los elementos del delito de agresión son: el empleo de fuerza o violencia contra una persona y que ello, según se infiere de la preposición *"para",* se haga con la intención de causarle daño. Asimismo, es necesario que se establezca una relación causal entre el empleo de fuerza o violencia y el daño que se le cause a la persona. Véase: Nevárez, *Código Penal de Puerto Rico Revisado y Comentado,* Análisis Editorial del Art. 94, Ed. 1993, a la pág. 143.

Aunque los términos *"fuerza"* y *"violencia"* no están definidos en dicho articulado ni se encuentran definidos en el Art. 7 del mismo Código, podría definirse el término *"fuerza"* como *"aquella causa capaz de modificar el estado de reposo o de movimiento de un cuerpo",* y el término *"violencia"* como la *"calidad de lo violento",* siendo lo *"violento",* a su vez, aquello *"que obra con ímpetu y fuerza". Diccionario de la Real Academia Española,* 20 ed., 1984.

Por su parte, el Tribunal Supremo de Puerto Rico ha tenido la oportunidad de enfrentarse a casos donde ha sido necesario definir lo que significa la frase *"empleo de fuerza o violencia"* así como aquella relativa a *"causar daño según está tipificado.* Así pues, en el caso de *Pueblo v. Villaveitía,* 41 D.P.R. 316 (1930), nuestro más Alto Foro indicó que darle un beso a una mujer contra su voluntad, así como tomarse cualquier libertad indecente con ella equivale a un delito de agresión.

De igual modo dicho foro, en *Pueblo v. Díaz,* 62 D.P.R. 499, 504 (1943), estableció que ***"el daño no tiene que ser necesariamente corporal, pudiendo constituirlo cualquier contacto ilegal realizado sin el consentimiento de la víctima, que ofenda su pudor, le produzca verguenza, humillación o angustia mental".*** (Enfasis nuestro).

De los anteriores casos puede inferirse, además, que el tipo de intención requerida por estos artículos es la llamada *"intención general"* definida en el artículo 15 del Código Penal, 33 L.P.R.A. sec. 3062, como aquella en que *"el resultado delictivo, aunque no fuere querido, fue previsto o pudo ser previsto por la persona como consecuencia natural o probable de su acción u omisión".*

Aplicado el derecho expuesto anteriormente a los hechos del presente caso, según vertidos por los testigos, no nos cabe la menor duda de que el fallo pronunciado por el tribunal estuvo completamente justificado por la prueba que tuvo ante su consideración. Veamos.

En el caso de autos, según surge de la E.N.P., la prueba presentada por el Ministerio Público y creída por el tribunal sentenciador demostró, indisputablemente, que el día de los hechos el apelante *"se abalanzó, forcejeó [y] le apretó las manos"* a la perjudicada. Es decir, surge tanto del testimonio de la perjudicada como del testimonio de su hija, que el apelante la empujó, le viró y le torció los brazos a la primera con el propósito de quitarle unas llaves de la casa que ésta tenía en su poder y se negaba a entregarle a éste. Ciertamente, aunque no se desprende que la perjudicada haya sufrido daño corporal grave o notable, sí se desprende, con claridad, que hubo un empleo de fuerza suficiente y necesario, por parte del apelante hacia la perjudicada, capaz de causarle daño suficiente como para que ésta soltara las llaves y saliera corriendo en un estado emocional sensitivo hacia

el cuartel.

En conclusión, con este testimonio, al cual el juzgador de los hechos le dio entero crédito, no nos cabe la menor duda de que se configuró el delito por el cual el apelante resultó culpable y convicto. En adición, no habiendo demostrado el apelante que haya mediado prejuicio, parcialidad, pasión o error manifiesto en la apreciación que hiciera el tribunal sentenciador de dicha prueba, no vemos razón para intervenir con su dictamen.

## IV

En el tercer y último señalamiento se le imputa al tribunal el haber errado al resolver que era impermisible que Adalberto Rodríguez Robles declarara en el proceso, por razón de la relación médico-paciente entre éste y la perjudicada. Se trata, en esencia, de un error de exclusión de prueba. No le asiste la razón. Veamos.

En primer lugar, al amparo de las Reglas 4 y 5 de Evidencia, 3 2 L.P.R.A. Ap . IV R. 4 y 5, no se revocará ninguna sentencia de un tribunal de primera instancia a menos que concurran dos circunstancias: (a) que la parte afectada por la errónea admisión o exclusión de la prueba hubiera objetado oportuna y correctamente y (b) que se determine que el error en la admisión o exclusión de la prueba fue un factor decisivo o sustancial en el fallo, veredicto, sentencia o determinación cuya revocación se solicita en apelación. *Pueblo v. Martínez Solís,* 128 D.P.R. ___ (1991), **91 J.T.S. 29**; E. Chiesa, *Práctica Procesal Puertorriqueña - Evidencia, San Juan,* **Publicaciones J.T.S., Inc.,** 1979, a la página 4.

Cuando el alegado error es de exclusión de evidencia, la parte perjudicada por el error es el proponente de la evidencia. En este caso la objeción debe hacerse mediante una oferta de prueba -*"offer of proof"*- o su equivalente según lo dispone la Regla 5 de Evidencia, *supra.* ■ Así por ejemplo, objetada una pregunta a un testigo, la parte que lo presenta debe hacer constar en el récord, con toda la amplitud posible, lo que el testigo a quien no se ha permitido contestar hubiera declarado; u obtener que se haga un récord completo de la evidencia que trata de lucidarse por medio de la pregunta objetada, con el fin de que este Tribunal pueda determinar si la prueba, de haber sido creída por la corte inferior, hubiera justificado un resultado distinto del caso. *Pueblo v. López Rivera,* 309, D.P.R. 359, 368 (1974); E. Chiesa, *ob. cit.,* a la página 7. La oferta de prueba, claro está, se requiere para brindarle, en primer lugar la oportunidad al tribunal de instancia para que haga la determinación de exclusión de forma informada. Por ello es imprescindible, como dispone la regla, que se traiga a la atención de dicho foro la naturaleza, propósito y pertinencia de dicha evidencia. Se requiere, además, dicha oferta de prueba para poder levantar el error en apelación adecuadamente, y con el propósito de que el tribunal apelativo pueda evaluar la magnitud del error alegado.

Es precisamente por ello, que si no se objeta oportunamente y se hace la oferta de prueba, surge el efecto de renunciar al planteamiento, por lo que el apelante no podrá quejarse en revisión o apelación de tal error. Es decir, un apelante no puede traer en apelación planteamientos que no levantó en el Tribunal de Primera Instancia. *Pueblo v. Rivera Lugo y Almodóvar, supra.*

En el caso ante nos, en primer lugar, de una lectura a la E.N.P. certificada y aprobada por el Tribunal de Primera Instancia, no se desprende, tan siquiera, que la representación legal del apelante solicitara a dicho tribunal que se citara como testigo al Dr. Rodríguez Robles para que declarara en el proceso como testigo. Mucho menos se desprende que se haya hecho la oferta de prueba que requiere la Regla 5 de Evidencia, *supra.* Es decir, no surge de la E.N.P. que el apelante hiciera constar para el récord lo que hubiere declarado el Dr. Rodríguez Robles como testigo.

Surge sin embargo, de los autos originales del caso, que durante la ventilación del juicio en su fondo, la defensa efectivamente solicitó que se citara al Dr. Rodríguez Robles, lo cual fue objetado por el Ministerio Público por el fundamento de que el testimonio de dicho testigo constituía materia privilegiada al amparo de lo dispuesto en la Regla 26 de las de Evidencia, *supra.* Ante tal objeción, el tribunal se reservó el fallo de la admisibilidad del referido testimonio para una fecha posterior. Véase, minuta del 10 de marzo de 1995. No surge que en esa ocasión el apelante haya expresado el propósito o la pertinencia del testimonio del referido testigo. Más aún, posteriormente, el 16 de marzo de 1995, el Ministerio Público sometió *"Moción"* en la cual reiteró los fundamentos para su objeción a que se admitiera el testimonio del Dr. Rodríguez Robles y la cual acompañó con

declaraciones juradas de la perjudicada y su hija, a los efectos de que éstas no renunciaban al privilegio en cuestión, es decir, al privilegio médico-paciente. El apelante no replicó de forma alguna a dicha moción. Acto seguido, el 24 de marzo de 1995, el tribunal emitió una resolución en la que resolvió que era impermisible que el Dr. Rodríguez Robles declarase en el proceso. Esta resolución le fue debidamente notificada de su archivo en autos al apelante el 27 de marzo de 1995. A pesar de ello éste nada hizo al respecto. Más aún, tan siquiera, luego de que el tribunal emitiera su fallo, el apelante mencionó algo relacionado a la no admisión de dicho testimonio en su *"Moción Solicitando Reconsideración de Fallo"* del 27 de junio de 1995.

En conclusión, en ningún momento el apelante objetó de forma alguna la determinación del foro de instancia con relación a la inadmisibilidad del referido testimonio, mucho menos hizo oferta de prueba alguna. Es decir, nunca puso en condiciones a dicho foro de determinar la pertinencia de la prueba no admitida. De igual forma, tampoco ha puesto a este Tribunal en condiciones de decidir si la exclusión de tal testimonio hubiere conllevado, de haber sido creído por el juzgador de instancia, un resultado distinto, ello por razón de que no sabemos lo que éste hubiere testificado o en relación a qué iba dirigido su testimonio. Tampoco puede pretender el apelante hacer la oferta de prueba en su alegato si no la hizo en instancia, donde debió haberla hecho.

En segundo lugar, aun si entendiéramos que se hizo la oferta de prueba conforme a lo exigido por la Regla 5 de Evidencia, *supra*, y que, en efecto, el hecho de que se halla excluido dicho testimonio constituyó una exclusión errónea de prueba, ello no sería suficiente motivo de revocación. Es decir, se desprende del alegato del apelante que éste pretendía traer dicho testigo a los únicos fines de impugnar el testimonio de la perjudicada en relación a lo que ésta le decía al galeno en cuanto a sus problemas en el trabajo y en el hogar, en particular aquellos con el apelante. A estos efectos, dicho testimonio resultaría claramente impertinente toda vez que el apelante fue hallado culpable del delito de agresión y no del delito de maltrato. Es decir, el hecho de que la peticionaria le haya contado o no al referido doctor sus problemas, nada tiene que ver con el hecho de que el apelante la haya agredido el día de los hechos y razón por la cual no hubiere afectado en lo más mínimo dicho dictamen. Quizás hubiere sido diferente, es decir, en cuanto a pertinencia se refiere, si hubiese sido hallado culpable por el delito de maltrato, el que como se sabe requiere un patrón de conducta reiterado.

Por los fundamentos antes expresados se confirma la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Mayaguez.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 96 DTA 151**

**1.** El delito de Maltrato dispone, en lo pertinente como sigue:

*"Toda persona que empleare fuerza física o violencia psicológica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien sostuviere o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, para causarle daño físico a su persona, a los bienes apreciados por ésta, excepto aquellos que pertenecen privativamente al ofensor, o a la persona de otro o para causarle grave daño emocional, será sancionada con pena de reclusión por....."*

**2.** La Regla 5 provee:

*"No se dejará sin efecto una determinación de exclusión de evidencia ni se revocará sentencia o decisión alguna por motivo de exclusión errónea de evidencia a menos que:*

*(1) La evidencia fue erróneamente excluida a pesar de que la naturaleza, propósito y pertinencia de la misma fue traída a la atención del tribunal mediante una oferta de prueba o por cualquier otro modo, y*

*(2) El tribunal que considera el efecto de la exclusión errónea entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita".*